UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
In re:

Charles H. Henneborn,

                   Debtor.
-------------------------------------------------------------------X
Sheet Metal Workers' National Pension Fund;
National Energy Management Institute
Committee for the Sheet Metal and Air
Conditioning Industry; Sheet Metal
Occupational Health Institute Trust;
International Training Institute for the Sheet
Metal and Air Conditioning Industry; and
National Stabilization Agreement of the Sheet
Metal Industry Fund,

                   Plaintiffs,

          -against-

Charles H. Henneborn,

                  Defendant.
-------------------------------------------------------------------X

Chapter 7

Case No: 13-73280-las

Adv. Pro. No. 13-8111-las

**MEMORANDUM OPINION AND ORDER DENYING
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

## I.    Introduction

      Plaintiffs Sheet Metal Workers' National Pension Fund ("NPF"), National Energy

Management Institute Committee for the Sheet Metal and Air Conditioning Industry

("NEMIC"), Sheet Metal Occupational Health Institute Trust ("SMOHIT"), International

Training Institute for the Sheet Metal and Air Conditioning Industry ("ITI"), and National

Stabilization Agreement of the Sheet Metal Industry Fund ("SASMI") (collectively,

"plaintiffs") bring this action asserting that the debt owed them by defendant Charles H.

Henneborn ("defendant"), the debtor in this chapter 7 case, is not dischargeable under 11

U.S.C. § 523(a)(4).[1]  Nondischargeability under § 523(a)(4) requires a showing that the debt at issue was obtained by (i) fraud or defalcation while acting in a fiduciary capacity, (ii) embezzlement, or (iii) larceny.  In their amended complaint, plaintiffs allege that they are employee benefit plans under Section 3(3) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*, and that their debt, in the amount of $370,034.66, arises out of the failure of All Seasons Siding, Inc. ("All Seasons") to pay outstanding employer contributions to plaintiffs pursuant to certain collective bargaining agreements, for which defendant is personally liable.  Plaintiffs contend that defendant, as an officer of All Seasons, had authority and control over the management and disposition of employee benefit plan assets, and the failure of All Seasons to account for and pay over employee benefit fund contributions renders its debt nondischargeable under § 523(a)(4) based upon defendant's defalcation while acting in a fiduciary capacity.

Now before the Court is plaintiffs' motion for summary judgment [Adv. Dkt. No. 21][2] pursuant to Rule 56 of the Federal Rules of Civil Procedure, made applicable here by Bankruptcy Rule 7056.  Defendant did not file opposition.  The Court has carefully reviewed the moving papers and considered the parties' oral argument.  For the reasons discussed in this Memorandum Opinion and Order, material issues of fact preclude summary judgment, and on that basis, the motion is denied.

## II.    Jurisdiction

The Court has jurisdiction over this matter under 28 U.S.C. § 1334(a) and (b) and the Standing Order of Reference entered by the United States District Court for the Eastern

---

[1] Unless otherwise stated, all statutory references are to sections of the United States Bankruptcy Code, 11 U.S.C. § 101, *et seq.*, and will hereinafter be referred to as "§ (section number)".

[2] Unless otherwise stated, citations to docket entries in the adversary proceeding. Adv. Pro. No. 13-8111-las, are cited as "(Adv. Dkt. No. ____)", and docket entries in the main bankruptcy case, Case No. 13-73280-las, are cited as "(Bankr. Dkt. No. ____)".

District of New York pursuant to 28 U.S.C. § 157(a), dated August 28, 1986, as amended by Order dated December 5, 2012, effective *nunc pro tunc* as of June 23, 2011. Consideration of the motion is a core proceeding under 28 U.S.C. § 157(b)(2) in which final orders or judgment may be entered by this Court pursuant to 28 U.S.C. § 157(b)(1).

### III.    Background

#### a.    Factual Background[3]

Plaintiffs are multi-employer, employee benefit funds within the meaning of Section 3(3) of ERISA. Pls.' 7056-1 ¶ 1[4]; Strang Decl., Exhibits D, E, and F; *see* 29 U.S.C. § 1002(3). Defendant was a principal owner and Vice President of All Seasons, a New York corporation engaged in the installation and repair of architectural siding and roofing panels. Pls.' 7056-1 ¶ 3, Def. Dep. at 6:3-10, 9:8-11. Originally a 50% shareholder when he began working at All Seasons in December 2004, defendant's ownership interest was reduced to 20%[5]

---

[3] The Court's account of the underlying facts is drawn from the parties' pleadings and plaintiffs' submissions in support of the motion for summary judgment, including plaintiffs' Local Bankruptcy Rule 7056-1 Statement ("plaintiffs' 7056-1 statement" or "Pls.' 7056-1") [Adv. Dkt. No. 21-2], the declaration of Amy E. Strang, Esq. (the "Strang Declaration" or "Strang Decl.") [Adv. Dkt. No. 21-3], defendant's March 13, 2014 deposition ("Def. Dep.") annexed to the Strang Decl. as Exhibit L, and the declaration of Patricia Egan (the "Egan Declaration" or "Egan Decl.") [Adv. Dkt. No. 30].

[4] Defendant did not submit a responsive Rule 7056-1 statement as required by LBR 7056-1, and the Court therefore deems the facts contained in Pls.' 7056-1 admitted and uncontroverted. *See* LBR 7056-1 ("All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted by the opposing party unless controverted by the statement required to be served by the opposing party."). However, a local rule, such as LBR 7056-1, "does not absolve the party seeking summary judgment of the burden of showing that it is entitled to judgment as a matter of law, and a Local Rule 56.1 statement is not itself a vehicle for making factual assertions that are otherwise unsupported in the record." *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 74 (2d Cir. 2001). Accordingly, the Court must determine whether the admitted facts are sufficient to entitle the moving party to summary judgment, even if the opponent does not specifically deny the asserted fact. *See Giannullo v. N.Y.C.*, 322 F.3d 139, 140 (2d Cir. 2003); *Morisseau v. DLA Piper*, 532 F. Supp. 2d 595, 618 (S.D.N.Y. 2008) (A court must ensure the "averments in the movant's Rule 56.1 Statement are supported by evidence and show an absence of a genuine issue for trial.").

[5] Walter Kakareko III ("Kakareko"), President of All Seasons, held the remaining shares. Kakareko filed for chapter 7 relief on July 25, 2014 (*See* Case No. 14-73390-las). Plaintiffs filed a similar complaint against Kakareko (*See* Adv. Pro. No. 14-8229-las) and have moved for summary judgment in that adversary proceeding.

approximately three years later and remained at that level until he left the company in November 2012.[6]  Def. Dep. at 6:11-7:17.

All Seasons entered into collective bargaining agreements under which All Seasons was obligated to make certain contributions to plaintiffs based upon the hours worked by the participants employed by All Seasons.[7]  Def. Dep. at 20:2-18.  Pursuant to the collective bargaining agreements, All Seasons was required to make contributions to plaintiffs for the period January 1, 2009 through February 28, 2013.  Pls.' 7056-1 ¶ 16; Strang Decl., Exhibit D, Art. XII B, Exhibit E, Art. XII B, Exhibit F, Art. XII B.  Plaintiffs are third party beneficiaries of the collective bargaining agreements. Pls.' 7056-1 ¶ 6; Strang Decl., Exhibit D, Art. XII B; Exhibit E, Art. XII B; and Exhibit F, Art. XII B.  The collective bargaining agreements incorporate by reference certain agreements and declarations of trust of plaintiffs.  Pls.' 7056-1 ¶ 7; Strang Decl., Exhibit D, Art. XII B, Sections 21C and 24A; Exhibit E, Art. XII B, Sections 21C and 24A; Exhibit F, Art. XII B, Sections 21C and 24A; Exhibits G, H, I, J, K.  The collective bargaining agreements provided, *inter alia*:

> Contributions are considered assets of the respective Funds and title to all monies paid into and/or due and owing said Funds shall be vested in and remain exclusively in the Trustees of the respective Funds.  The Employer shall have no legal or equitable right, title or interest in or to any sum paid by or due from the Employer.

---

[6] Defendant's deposition contains conflicting testimony as to when he first became employed with All Seasons. Both December 2004 and December 1994 were discussed.  Def. Dep. at 6:3-16, 17:19-24.  Regardless, the testimony is clear that during the time of the alleged defalcation from January 2009 through May 2012, defendant was Vice President and 20% shareholder of All Seasons.  Def. Dep. at 6:17-7:17.

[7] Neither party expressly states whether the delinquent contributions at issue here are employer contributions or employee contributions.  Paragraphs 14 and 19 of the Amended Complaint refer to employer contributions and paragraphs 5 and 16 of plaintiffs' 7056-1 statement likewise refers to employer contributions.  In addition, upon review of the collective bargaining agreements, it appears the contributions at issue are employer contributions. As such, the Court will assume that the delinquent contributions are employer contributions for purposes of plaintiffs' motion.

Pls.' 7056-1 ¶ 9; Strang Decl., Exhibit D, Art. XII A, Section 19.B, Art. XII B, Section 24B; Exhibit E, Art. XII A, Section 19.B, Art. XII B Section 24.B; Exhibit F, Art. XII A, Section 19.B, Art. XII B, Section 24.B.

On July 17, 2012, defendant and Kakareko signed a confessed judgment note agreeing that All Seasons and defendant and Kakareko, individually, owed plaintiffs $229,596.27 in delinquent contributions, interest and liquidated damages.  Strang Decl., Exhibit P.

**b. Procedural History**

Defendant filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code on June 19, 2013 (Case No. 13-73280-las).[8]  On July 16, 2013, NPF filed two proofs of claim for unpaid contributions, plus interest and liquidated damages, in defendant's bankruptcy case: (1) Proof of Claim #1 for $224,916.77; and (2) Proof of Claim #2 for $145,117.89.  On July 17, 2013, plaintiffs filed a complaint against defendant.  [Adv. Dkt. No. 1].  In the complaint, plaintiffs brought an action under § 727(a)(2) to deny defendant's discharge or, in the alternative, to except the debt owed by defendant from discharge under § 523(a)(4).  By stipulation, plaintiffs filed an amended complaint.  In the amended complaint [Adv. Dkt. No. 10], plaintiffs withdrew the claim for relief under § 727(a)(2) and renewed their allegation that the debt owed to them by defendant arose out of  defendant's defalcation while acting in a fiduciary capacity and is nondischargeable under § 523(a)(4).  Plaintiffs' claim is premised on defendant's exercise of authority or control over the management or disposition of certain assets of plaintiffs within the meaning of Section 1002(21)(A) of ERISA.  Amended Comp. ¶¶ 28, 35.  Plaintiffs alleged that plan assets include the unpaid employer contributions, and defendant determined whether All Seasons timely made contributions to plaintiffs.  Amended Compl. ¶¶ 15, 29-34.  Plaintiffs contend that by exercising control over plan assets defendant

---

[8] On July 9, 2013, All Seasons, d/b/a All Season Roofing & Siding, Inc. filed a voluntary petition for relief under chapter 7 (Case No. 13-73565-las).  All Seasons' bankruptcy case was closed on March 21, 2017.

is an ERISA fiduciary within the meaning of Section 3(21) of ERISA, 29 U.S.C. § 1002(21)(A), and defendant breached his fiduciary duty by permitting plan assets to be used for purposes other than payment to plaintiffs.  Amended Compl. ¶¶ 37, 38, 40.

Defendant answered the original complaint.[9]  [Bankr. Dkt. No. 13].  In his answer, defendant asserted that he did not exercise authority or control over the management or disposition of corporate assets, nor did he have authority and control over contributions by All Seasons to plaintiffs.  Ans. ¶ 18.  Defendant further asserted that "[f]ull authority and control of all financial matters lied exclusively with the eighty percent shareholder."  *Id.*

Plaintiffs filed the motion for summary judgment claiming that defendant's debt for the unpaid contributions was nondischargeable under § 523(a)(4) because his failure to make the required contributions to plaintiffs constituted defalcation while acting in a fiduciary capacity.  As noted above, defendant did not file opposition to plaintiffs' motion.

The Court heard oral argument on the motion.  At the hearing, defendant's counsel, Joseph J. Fontanetta, Esq., represented that he did not oppose the motion because defendant had instructed him to cease any further work in this adversary proceeding.  However, counsel did raise certain arguments on behalf of defendant.  In particular, counsel argued that the deposition testimony of Kakareko and Egan, submitted by plaintiffs in support of the motion for summary judgment, could not be used against defendant because the testimony was taken in an action pending in the District Court for the Eastern District of New York against Kakareko to which defendant was not a party.  Further, counsel stated that defendant did not receive notice of the depositions and, therefore, had no opportunity to cross-examine the witnesses.  The Court entered a scheduling order requiring plaintiffs and defendant to brief

---

[9] Defendant did not file an answer to the amended complaint.  Plaintiffs have not raised defendant's failure to respond to the amended complaint as an issue in this adversary proceeding.

the issue of whether Egan and Kakareko's deposition testimony could be used in support of the motion for summary judgment. [10]  [Adv. Dkt. No. 26].

Subsequently, plaintiffs' counsel advised the Court that in lieu of submitting an additional brief on the admissibility of the deposition testimony, plaintiffs intended to submit an affidavit from Egan, pursuant to Rule 56(e)(1) of the Federal Rules of Civil Procedure. An amended scheduling order was entered to allow time for the filing of the affidavit and any opposition to the motion for summary judgment.  [Adv. Dkt. No. 27].  Plaintiffs timely filed the Egan Declaration.  [Adv. Dkt. No. 30].[11]  Defendant did not oppose, and the matter was marked submitted.

## IV.    Legal Standard

Under Rule 56 of the Federal Rules of Civil Procedure, made applicable to this adversary proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure, summary judgment may not be granted unless the movant shows, based on admissible evidence in the record placed before the court, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986) ("[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

---

[10] Following the hearing, Mr. Fontanetta moved to withdraw as counsel to defendant.  [Adv. Dkt. No. 24]. Plaintiffs' filed a response.  [Adv. Dkt. No. 25].  The Court granted Mr. Fontanetta's motion to withdraw as counsel to defendant [Adv. Dkt. No. 29], and Mr. Fontanetta informed the Court that defendant would be proceeding *pro se.*

[11] The Egan Declaration makes reference to Egan's deposition testimony and a copy of the deposition transcript is attached to the declaration as an exhibit [Adv. Dkt. No. 30-1].  The Court will not consider the deposition testimony; only the Egan Declaration itself.  Additionally, the factual assertions set forth in paragraph 11 of plaintiffs' 7056-1 statement refers to Kakareko's deposition testimony and the factual assertions set forth in paragraphs 12-15 refer to Egan's deposition testimony as evidentiary support for each factual assertion.  Plaintiffs' 7056-1 statement was filed prior to plaintiffs' decision to submit the Egan Declaration in lieu of relying on the deposition testimony of Egan and Kakareko.  Thus, the Court will disregard paragraph 11 and 12-15 of plaintiffs 7056-1 statement except to the extent that factual assertions set forth therein are established by documentary evidence and/or the Egan Declaration.  Further, the factual assertions set forth in paragraph 10 of plaintiffs' 7056-1 statement refer to both defendant's deposition testimony and that of Kakareko.  The Court will not consider the deposition testimony of Kakareko as evidentiary support for the factual assertions set forth in paragraph 10.

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' ") (quoting former Fed. R. Civ. P. 56(c)). A fact is considered material if it "might affect the outcome of the suit under the governing law," and a genuine dispute exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

The moving party bears the burden of demonstrating the absence of a genuine dispute as to any material fact. *Celotex,* 477 U.S. at 322-23. The evidence on each material element of its claim or defense must be sufficient to entitle the moving party to relief in its favor as a matter of law. *Vermont Teddy Bear Co. v. 1-800 Beargram Co.,* 373 F.3d 241, 244 (2d Cir. 2004).

If the movant meets its initial burden, the nonmoving party "must come forward with 'specific facts showing that there is a genuine issue for trial.' " *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting former Fed. R. Civ. P. 56(e)). "[M]ere speculation or conjecture as to the true nature of the facts" will not suffice. *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010). Thus, to meet its burden, the nonmoving party must offer more than a "scintilla of evidence" that a genuine dispute of material fact exists, *Anderson*, 477 U.S. at 252, or that there is some "metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586 (1986). It must present "significant probative evidence" that a genuine issue of fact exists. *Anderson*, 477 U.S. at 249 (internal citations and quotations marks omitted). In addition, "[o]nly admissible evidence need be considered by the trial court in ruling on a motion for summary judgment." *Porter v. Quarantillo*, 722 F.3d 94, 97 (2d Cir. 2013) (internal quotation marks and citation omitted).

On a motion for summary judgment, the court must "construe all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in its favor." *Dickerson v. Napolitano*, 604 F.3d 732, 740 (2d Cir. 2010). The Court's job is "not to weigh the evidence or resolve issues of fact." *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 254 (2d Cir. 2002). "Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." *Jeffreys v. N.Y.C.*, 426 F.3d 549, 553-54 (2d Cir. 2005) (citation omitted). A court should grant the motion if "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there [being] no genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted).

Even when a motion for summary judgment is unopposed, the court cannot grant the motion "without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial." *Vermont Teddy Bear Co.*, 373 F.3d at 244 (citing *Amaker v. Foley*, 274 F.3d 677, 681 (2d Cir. 2001)). If the evidence submitted in support of the motion fails to satisfy the movant's burden, then summary judgment must be denied even if no opposing evidentiary matter is presented. *Id.*

## V.    Discussion

Plaintiffs have the burden of demonstrating that their debt is nondischargeable by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291 (1991). "[E]xceptions to discharge are to be narrowly construed and genuine doubts should be resolved in favor of the debtor." *Denton v. Hyman* (*In re Hyman*), 502 F.3d 61, 66 (2d Cir. 2007). This is consistent with the fresh start policy of the Bankruptcy Code. *See Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 367 (2007) ("The principal purpose of the Bankruptcy Code is to grant a 'fresh start' to the 'honest but unfortunate debtor.' ") (citation omitted).

9

To prevail on a claim that a debt is nondischargeable under § 523(a)(4) by reason of defalcation while acting in a fiduciary capacity, a plaintiff must prove three elements - "first, that the debt was incurred in connection with an express or technical trust, second, that the debtor acted in a fiduciary capacity with respect to that trust, and third, that the debtor engaged in fraud or a defalcation within the meaning of bankruptcy law." *VW Credit, Inc. v. Salim (In re Salim),* No. 13-01442-ess, 2015 WL 1240000, at *14 (Bankr. E.D.N.Y. Mar. 16, 2015); *N.Y. v. Suarez (In re Suarez),* 367 B.R. 332, 351 (Bankr. E.D.N.Y. 2007); *Chao v. Duncan (In re Duncan)*, 331 B.R. 70, 77 (Bankr. E.D.N.Y. 2005). The Court will address each of the elements in turn.

### a. Express or Technical Trust

The first requirement under § 523(a)(4) is that the debt must arise from an express or technical trust. "Section 523(a)(4) applies only to express or technical trusts, not to constructive trusts, implied trusts, or trusts implied on the basis of wrongful conduct." *In re Duncan*, 331 B.R. at 77 (citations omitted). According to the Supreme Court in *Davis v. Aetna Acceptance Co.*:

> It is not enough that, by the very act of wrongdoing out of which the contested debt arose, the bankrupt has become chargeable as a trustee ex maleficio. He must have been a trustee before the wrong and without reference thereto . . . the language would seem to apply only to a debt created by a person who was already a fiduciary when the debt was created.

*Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 333 (1934) (internal citations and quotations omitted).

An express trust "is initiated by one entity's transfer of property to another entity coupled with a manifestation of an intention to create a trust." *In re Suarez,* 367 B.R. at 351 (citations omitted). Although often created by contract, a trust relationship for purposes of

§ 523(a)(4) is not confined to trusts arising under a formal trust agreement, nor to those expressly imposed by statute.  *See In re Parker*, 388 B.R. 11, 18 (Bankr. N.D.N.Y. 2008). "Courts have extended § 523(a)(4) to 'relationships in which 'technical trust type' obligations are imposed pursuant to statute or common law.' " *In re Suarez,* 367 B.R. at 352 (quoting *Hutton v. Schulman* (*In re Schulman*), 196 B.R. 688, 697 (Bankr. S.D.N.Y. 1996)).

Where the basis for the existence of a technical trust is statutory, the statute must: (1) define the trust res; (2) identify the fiduciary's obligations; and (3) impose fiduciary obligations prior to and without reference to the alleged wrongdoing that created the debt. *In re Duncan*, 331 B.R. at 81 (citing *Blyler v. Hemmeter* (*In re Hemmeter*), 242 F.3d 1186, 1190 (9th Cir. 2001)).  The Supreme Court has noted that "ERISA abounds with the language and terminology of trust law."  *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 110 (1989); *see also In re Duncan*, 331 B.R. at 77 (citing *Friedlander v. Doherty*, 851 F. Supp. 515, 520 (N.D.N.Y. 1994)) ("Both the language and the legislative history of ERISA suggest that Congress intended traditional concepts of trust law to be applied to cases brought under ERISA.").

Courts have held that ERISA-covered employee benefit plans are trusts for purposes of § 523(a)(4).  *See, e.g., Raso v. Fahey* (*In re Fahey*), 482 B.R. 678, 689-90 (B.A.P. 1st Cir. 2012); *In re Hemmeter*, 242 F.3d at 1190; *Sheet Metal Workers' Nat'l Pension Fund v. Kern* (*In re Kern*), 542 B.R. 87, 95-96 (Bankr. E.D.N.Y. 2015); *In re Duncan*, 331 B.R. at 78-80; *Shephard v. O'Quinn* (*In re O'Quinn*), 374 B.R. 171, 178-82 (Bankr. M.D.N.C. 2007); *Tr. of the Colo. Ironworkers Pension Fund v. Gunter* (*In re Gunter*), 304 B.R. 458, 461-62 (Bankr. D. Colo. 2003); *Eavenson v. Ramey*, 243 B.R. 160, 166 (N.D. Ga. 1999); *Cochran v. Coleman* (*In re Coleman*), 231 B.R. 393, 395-96 (Bankr. S.D. Ga. 1999).

The undisputed facts and documentary evidence presented by plaintiffs establish that the employer benefit plan at issue satisfies the elements of a technical trust under § 523(a)(4). Plaintiffs are employee welfare benefit plans within the meaning of ERISA. 29 U.S.C. § 1002(1).[12] All Seasons was an "employer" as defined under ERISA. 29 U.S.C. § 1002(5). All Seasons entered into contracts with plaintiffs that required it to make contributions to plaintiffs for hours worked by plan participants employed by All Seasons. The collective bargaining agreements and trust agreements contain trust and ERISA language. *See* Strang Decl., Exhibits D-K. The trust res is the employee welfare benefit plan itself. *See* 29 U.S.C. § 1102; *see also Eavenson*, 243 B.R. at 166. ERISA defines the duties of an ERISA fiduciary. *See* 29 U.S.C. § 1104. "These duties necessarily arise upon creation of an ERISA plan and predate the creation of any debt to the plan participant creditor." *In re Hemmeter,* 242 F.3d at 1190. Here, the trust was in place when the alleged defalcation, or the nonpayment of employer contributions, occurred.

Accordingly, the Court finds that the ERISA employee benefit plans before it are trusts for purposes of § 523(a)(4) and, thus, the first element of the defalcation exception has been satisfied.

### b. Fiduciary Capacity

Next, the Court must determine whether defendant acted with "fiduciary capacity" under § 523(a)(4). Plaintiffs argue that defendant had fiduciary capacity under § 523(a)(4) because by exercising authority or control over the management or disposition of plan assets,

---

[12] ERISA defines "employee welfare benefit plan" as: any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in section 186(c) of this title (other than pensions on retirement or death, and insurance to provide such pensions). 29 U.S.C. § 1002(1).

defendant is a fiduciary under ERISA, and an ERISA fiduciary is a fiduciary for purposes of § 523(a)(4). There is a split in authority as to whether an ERISA fiduciary *per se* satisfies the fiduciary standard under § 523(a)(4). *See In re Kern*, 542 B.R. at 96-97 (collecting cases). As noted in *Kern*, the Second Circuit Court of Appeals has not ruled on this issue, but courts in the Second Circuit have found that an ERISA fiduciary *per se* satisfies the fiduciary requirement of § 523(a)(4). *Id.* The court in *Kern* concluded that an ERISA fiduciary is a fiduciary for § 523(a)(4) purposes. *Id.* at 97-98 ("Because ERISA is a federal law and fiduciary status and defalcation under the Bankruptcy Code are also determinations made under federal law, this Court finds no compelling reason to hold that an ERISA fiduciary is not a *per se* fiduciary for § 523(a)(4) purposes.").

Before this Court decides whether to follow the courts that have adopted the *per se* test, it must first determine if defendant is an ERISA fiduciary. Plaintiffs ask this Court to find that defendant breached his fiduciary obligations owed to plaintiffs under ERISA by permitting plan assets to be used for purposes other than to pay All Seasons' requisite contributions to plaintiffs. The inquiry, therefore, must begin with whether defendant is a fiduciary under ERISA. *See Pegram v. Herdrich*, 530 U.S. 211, 226 (2000) ("[T]he threshold question is . . . whether [the defendant] was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to the complaint").

"[ERISA] provides that not only the persons named as fiduciaries by a benefit plan but also anyone else who exercises discretionary control or authority over the plan's management, administration, or assets is an ERISA 'fiduciary.' " *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 251 (1993) (internal citations omitted). Under ERISA,

> [A] person is a fiduciary with respect to a plan to the extent (i) he
> exercises any discretionary authority or discretionary control respecting
> management of such plan or exercises any authority or control respecting
> management or disposition of its assets, (ii) he renders investment advice

13

> for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A); *see also Mertens*, 508 U.S. at 262 ( "ERISA . . . defines 'fiduciary' not in terms of formal trusteeship, but in *functional* terms of control and authority over the plan . . . "); *LoPresti v. Terwilliger*, 126 F.3d 34, 40 (2d Cir. 1997) ("Unlike the common law definition under which fiduciary status is determined by virtue of the position a person holds, ERISA's definition is functional.") (citation omitted). "The definition of 'fiduciary' under ERISA focuses on the exercise, as well as the possession, of authority or control." *Blatt v. Marshall and Lassman*, 812 F.2d 810, 813 (2d Cir. 1987).

Plaintiffs do not allege that defendant is a named fiduciary under the plan. Plaintiffs solely argue that defendant exercised authority or control over the management or disposition of plan assets and he is, therefore, an ERISA fiduciary under subparagraph (i) of 29 U.S.C. § 1002(21)(A). To prevail on this argument, plaintiffs must show that (i) All Seasons' unpaid contributions are assets of the plan and (ii) defendant exercised authority or control over the management or disposition of plan assets sufficient to make him an ERISA fiduciary. The Court begins its analysis with whether the unpaid employer contributions at issue here were plan assets. If so, then the Court must analyze whether defendant exercised authority or control with respect to the management or disposition of those plan assets sufficient to make him an ERISA fiduciary. *Rahm v. Halpin* (*In re Halpin*), 566 F.3d 286, 289 (2d Cir. 2009).

### i.  *Whether Plan Assets Include Unpaid Employer Contributions*

In *Halpin*, the Second Circuit found that unpaid employer contributions are not plan assets. *Id.* at 290-91. An employer does not become a fiduciary of plan assets simply because he has a contractual obligation to pay contributions to an employee benefit fund. *Id.*

However, the Second Circuit did note that parties were "free to contractually provide for some other result." *Id.* at 290. Therefore, the rights and obligations created by the underlying agreement determine when an employer's contribution becomes a plan asset. *United States v. Panepinto*, 818 F. Supp. 48, 51 (E.D.N.Y. 1993). Delinquent contributions are plan assets if the underlying agreement creating the benefit fund defines them as such. *Tr. of the Plumbers Local Union No. 1 Welfare Fund, Additional Sec. Ben. Fund, Vacation & Holiday Fund, Trade Educ. Fund & 401(k) Sav. Plan v. Philip Gen. Const.,* No. 05CV1665 (NG)(RLM), 2007 WL 3124612, at *5 (E.D.N.Y. Oct. 23, 2007).

Here, the collective bargaining agreements expressly provide that "[e]mployer contributions are considered assets of the respective Funds and title to all monies paid into *and/or due and owing* said Funds shall be vested in and remain exclusively in the Trustees of the respective Funds. The Employer shall have no legal or equitable right, title, or interest in or to any sum paid by or *due from the Employer*." Strang Decl., Exhibit C, Art. XII.A, Section 19.B, Art. XII.B, Section 24.B; Exhibit D, Art. XII.A, Section 19.B, Art. XII.B Section 24.B; Exhibit E, Article XII.A, Section 19.B, Article XII.B, Section 24.B (emphasis added). The trust agreements define "contributions" in numerous ways: (i) NPF defines contributions as "monies *required to be paid* to the Fund by Employers" *Id.*, Exhibit F, Art. I, Section 5 (emphasis added); (ii) NEMIC, SMOHIT and ITI define contributions as "the money paid or payable into the Trust Fund by an Employer *Id.*, Exhibits G, H, and I, Art. I, Section 6; and (iii) SASMI finds contributions to "mean the contributions made or *required to be made* by Employers to the Fund." *Id.*, Exhibit J, Art. I, Section 4 (emphasis added).

Accordingly, based upon the record placed before it, the Court finds that the language of the collective bargaining agreements and trust agreements supports plaintiffs' theory that unpaid contributions owed by All Seasons to plaintiffs constitute plan assets under ERISA.

*See Halpin*, 566 F.3d at 290.  Having so found, the Court will now address whether plaintiffs have demonstrated that defendant exercised the requisite authority or control over plan assets to be a fiduciary within the meaning of 29 U.S.C. § 1002(21)(A)(i).

  *ii.*  *Whether Defendant is an ERISA Fiduciary*

  To constitute an ERISA fiduciary within the meaning of 29 U.S.C. § 1002(21)(A)(i), defendant must have exercised authority or control over the management or disposition of plan assets.  The provision does not specify that the control must be exclusive.  ERISA also requires a showing of "*actual* control over the disposition of plan assets."  *Blatt*, 812 F.2d at 813.  In *Lopresti,* the Second Circuit addressed whether two shareholders of a company with alleged control of plan assets were ERISA fiduciaries under a collective bargaining agreement.  Both shareholders had check signing authority for the company's bank accounts, and both signed checks which were forwarded to the union pursuant to the collective bargaining agreement.  *Lopresti,* 126 F.3d at 37-41.  The 51% shareholder was found to be an ERISA fiduciary because he had a role in determining which bills of the company to pay, commingled plan assets with the company's general assets, and used those plan assets to pay creditors other than the union.  *Id.* at 40.  The 49% shareholder did not sign the collective bargaining agreement, but was "aware generally" that deductions from employee wages were placed into the company's general operating account to be paid to the union when the bills were due.  *Id.* at 37.  The Second Circuit agreed with the district court's findings that the 49% shareholder was primarily a "production" person with "no responsibility for determining which of the company's creditors would be paid or in what order."  *Id.* at 40-41.  The Second Circuit found that he was not an ERISA fiduciary and could not be held personally liable for any breach of fiduciary duty.  *Id.* at 41.

### iii.    The Genuine Dispute of Material Fact

The evidence submitted by plaintiffs presents a factual conflict regarding the material threshold question of whether defendant is an ERISA fiduciary.  Plaintiffs assert that defendant (i) exercised authority or control over the management or disposition of plan assets and was responsible for determining whether or not All Seasons made timely contributions to plaintiffs for the benefit of those it employed and (ii) decided how to use plan assets, i.e., by paying All Seasons' other obligations instead of plaintiffs.  In support of that assertion, plaintiffs cite to the Egan Declaration.  In her declaration, Egan avers that defendant: (1) determined how much money was paid, if any, each month to plaintiffs; (2) signed All Seasons' checks; (3) told Egan to transfer money between corporate accounts of All Seasons when necessary; and (4) determined which accounts payable were paid each month and determined the priority of each payment.  (Egan Decl. at ¶¶ 12-16).

In his deposition, defendant testified that: (1) Kakareko negotiated contracts with the Sheet Metal Workers' International Association Local Union No. 28 and the Sheet Metal Workers' National Pension Fund (Def. Dep. at 13:16-14:6);  (2) he had seen but had never read the collective bargaining agreement for September 15, 2011 to July 31, 2014 (Strang Decl., Exhibit F; Def. Dep. at 14:7-25); (3) he "probably" had seen the Letter of Assent dated December 12, 1994 and signed by defendant and Kakareko (Strang Decl., Exhibit M; Def. Dep. at 17:12-18); (4) he had never seen the Memorandum of Understanding signed by Kakareko dated August 1, 1996 (Strang Decl., Exhibit N; Def. Dep. at 19:3-22); (5) Kakareko made all determinations as to whether contributions were timely made to the Sheet Metal Works International Association and what accounts payable were paid (Def. Dep. at 21:6-16; 34:23-35:13); (6) he had check signing authority, along with Kakareko (*Id.* at 21:17-24); (7) Kakareko told Egan which bills to pay during the time period of April 1, 2009 to February 2013 (*Id.* at 23:17-20; 23:25-24:16); and (8) he had no control or authority over which bills

17

were paid during April 1, 2009 through February 2013 and did not ever determine whether All Seasons made contributions to plaintiffs during that time (*Id.* at 23:21-24; 25:9-16).

In light of the evidence submitted by plaintiffs, the Court concludes that plaintiffs have failed to show there is no genuine dispute as to whether defendant is an ERISA fiduciary within the meaning of 29 U.S.C. § 1002(21)(A)(i).  The evidence submitted by plaintiffs on this material threshold question requires an assessment of weight and credibility.  As noted above, at the summary judgment stage, the Court's job is "not to weigh the evidence or resolve issues of fact."  *Lucente*, 310 F.3d at 254.  While plaintiffs will have an opportunity at trial to persuade the Court that defendant is an ERISA fiduciary, they have not carried their burden as movant to warrant summary judgment.[13]

### c.  Public Policy.

The Court need not address plaintiffs' policy arguments as the Court conducted a "statutory, not a policy, analysis."  *In re Kern*, 542 B.R. at 100 (citing *In re Zair,* 535 B.R. 15, 18 (Bankr. E.D.N.Y. 2015)).

---

[13] Having concluded that a genuine dispute exists as to whether defendant is an ERISA fiduciary, the Court need not determine, at this stage, whether an ERISA fiduciary *per se* satisfies the fiduciary standard under § 523(a)(4). Additionally, for the same reason, the Court need not address the third element plaintiffs must show to except the debt from discharge, i.e. defalcation.  Whether defendant committed defalcation must be determined under the heightened standard set forth by the Supreme Court in *Bullock v. BankChampaign, N.A.*, 133 S.Ct. 1754 (2013).  In *Bullock*, the Supreme Court held that defalcation "includes a culpable state of mind requirement," and one that involves "knowledge of, or gross recklessness in respect to, the improper nature of the relevant fiduciary behavior."  *Id.* at 1757.  Plaintiffs may address that factual issue, and any others, at trial.

## VI.    Conclusion

For the foregoing reasons, plaintiffs' motion for summary judgment is denied.  The parties are directed to appear before the Court for a status conference on July 20, 2017 at 10:00 a.m.

**SO ORDERED**.



**Dated: June 14, 2017**
**Central Islip, New York**

**Louis A. Scarcella**
**United States Bankruptcy Judge**